3-16-06-50 1st Midwest Bank Appalachia v. Prime Market Targeting, Inc. et al. Appellants. Mr. Supporta, you may proceed. Good morning, Honorable Justices Council, and may it please the Court. My name is Stephan Supporta, and I represent the appellants in this case. This is a commercial foreclosure case that went to judgment by way of a default. I represent the land trustee, Chicago Title Land Trust Company, as well as the beneficiary, Prime Market Targeting, Inc., and that was the business that my third client was engaged in. His name is Scott Duff. We present three issues before the Court this morning in this appeal. We challenge the Circuit Court's appointment of a receiver in this case before either Mr. Duff or Prime were served with process in the case. It's a de novo standard of review, and we think that that ruling should be reversed. Secondly, we challenge the entry of a judgment of foreclosure and sale in this case without an evidentiary hearing. It went by way of default. Again, the standard of review is de novo. And finally, our motion to vacate that default is reviewed under an abuse of discretion standard. The Court needs to look at whether substantial justice was done between the parties, and that is an abuse of discretion standard. We believe that the Court erred in denying that motion to vacate. Mr. Seporda, I have a question. On your first issue on the appointment of a receiver, did you raise that with the trial court below? I believe we did, Your Honor. In our motion to vacate the default, that was the only motion that I brought before the Court, and I may be mistaken. That may not have been raised in the Circuit Court below. Well, that could be a problem, Mr. Seporda. Okay. Well, I think that the Court should look at it in the context of whether substantial justice was done between the parties. And I believe that it was in that context that it was raised before the Circuit Court, because there was an issue of some $200,000 in accounts receivable that the bank seized through its receiver. And there was a least drastic method of protecting the bank's interest, and that was simply for the bank to receive rents from the commercial building that was occupied by my client as well as other tenants. Again, neither Duff nor Prime were given notice when the receiver was appointed under Section 1701B2 of the IMFL. It states that it talks about a right to possession prior to judgment, except if the mortgagor shall object and show cause, the Court shall allow the mortgagor to remain in possession. Again, the issue was raised when we went to vacate the judgment that was entered, that we weren't given credit for the $200,000 in accounts receivable that were seized by the receiver, as well as all the equipment, the computer equipment, the computer software, essentially put my client out of business before they were even served with process in this cause. I think that goes to the overall aspect of whether substantial justice was done in this case, and we maintain that it was not. I have a quick question for you as well. Didn't your client agree to vacate the premises? No, he didn't agree to vacate the premises. He was conducting business out of the premises, and what he did was try to mitigate his damages by finding buyers for the property in order to settle this case, and we'll get into that a little bit, but no, he was essentially put out by the receiver. Okay, I will look at the record. I thought that he reached an agreement as to the terms for him to move out. He took some business records with him by agreement and left, but I'll look at the record. No, I don't believe that's the case. I may be mistaken, but that's not my memory. Mr. Support, I have a question on that too. What was the timing from when the receiver was appointed to when you filed this emergency motion to vacate? Thank you, Your Honor. The receiver was appointed on the first day this was up, and I wasn't... Let me see if I can... Am I correct? Was it about a year? Give me a moment. We presented our motion to vacate the default on August 1st, 2018, and that motion was denied September 28, 2018. Okay, but the receiver was appointed in July of 2017, correct? I believe that's right, Judge. What was the reason for the delay by Mr. Duff in not coming in to vacate the order appointing the receiver and resuming occupancy and operation of his business? Well, Mr. Duff wasn't served with process until... He was, but he shouldn't be forced to submit to the jurisdiction of the court without being served, because they send in a receiver on essentially an ex parte basis. And he tried to work things out with the bank by bringing buyers to them, which he did. The SBA had to approve these buyers because there was also an SBA loan involved, and it was delays occasioned by that, which led to some of these deals falling through. If I could turn to the judgment of foreclosure and sale that was entered in the case without an evidentiary hearing by default, I would ask the court to take a look at the record of proceedings from April 9, 2018. It's set forth in our appendix at page A45 and following. It's about seven pages, and it's clear from an examination of this transcript that the circuit court, by its own admission, did not have a handle on what this case was about. He asked counsel at the beginning, at A46, so what is this? Is this a house or what is it? The court was told it was a commercial property, and yet throughout the hearing, the court seemed to be operating under the misapprehension that there was a right of redemption that Mr. Duff and Prime had. Mr. Duff came before the court, said he had a $1.5 million offer in hand. He just needed time for the SBA to approve it, and if you look at it by his own admission at page A50 of the appendix, the court himself says when he's informed that what's before him is a motion for summary judgment against the Small Business Administration and not against Prime and Duff, he's advised that Duff had been defaulted 21 days prior. The court says, I'm sorry, I'm a little confused, I'm just not getting this case very well. If you look at the last page of the transcript of A51, he talks about March 19th, there's a default entered. He's speaking to Mr. Duff now. You had 90 days from March 19th to try to get this thing squared away. Well, we're only 21 days outside of March 19th, so I don't know what the court's talking about there. And then he says, I'm entering motion for summary judgment against the one you want me to, directed to Mr. Capodona. Courts don't enter motions for summary judgment, they rule on them. The one that he brought the summary judgment against was the SBA and not Mr. Duff and Prime. But when the judgment is tendered to the court, he signs it. And somehow that's transmogrified to a judgment of foreclosure and sale against Mr. Duff and Prime on the basis of the default that was entered 21 days previous. Now, the court was operating under misapprehension. Based on his commentary throughout, he keeps talking about 90 days. That right of redemption under the IMFL is for residential foreclosure cases and not commercial foreclosure cases. So if you look at this with the novel standard of review under Kosterman, I think that it's clear that the court erred in entering judgment against my client. He was asking for 90 days. The court even said, let's set a short briefing schedule on the pending motion for summary judgment. We'll give you 14 to respond. We'll give the other side seven to reply, and then we'll come back in 28 days. And then when he was told that the summary judgment motion wasn't against Duff and Prime, the court went back to this misapprehension that he felt they had 90 days to redeem. In any event, section 1603B1 subpart 2 of the IMFL clearly states that redemption periods only apply to residential real estate. That's three months from the day of entry of a judgment of foreclosure. Turning to the motion to vacate default that this court reviews under an abusive discretion standard and substantial justice, the Fourth District Court in Whittakus v. Southwestern Electric Cooperative stated the following. The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits. We cite the Supreme Court case of Atkins that dealt with 50 subsection 5 of the Civil Practice Act, which is the predecessor to section 1301E. And the Atkins court dealing with the same issue said it's no longer necessary that such relief, in other words, vacating a default under 50 sub 5 of the Civil Practice Act, the predecessor to 21301E. It's no longer necessary that such relief be sought on the precise grounds that there is a meritorious defense and a reasonable excuse for not having timely asserted such defense. The overriding consideration now is whether or not substantial justice is being done between the litigants and whether it is reasonable under the circumstances to compel the other party to go to trial on the merits. Now, counsel has conceded that the motion was timely filed under 2-1301E that was recently upheld by the recently ruled by the Illinois Supreme Court in the McCluskey decision. In mortgage foreclosure cases, you've got the judgment of foreclosure and sale, and then you've got the final order in the cases, the final judgment approving the sale. We're not there. So up until McCluskey said, quote, up until a motion to confirm the sale is filed, a borrower may seek to vacate a default under the standards set forth in 21301E. I think that we met that standard in our motion to vacate default. We believe it was an abuse of discretion for the court not to grant that motion. As a matter of fact, as we set forth in our written submission, when the judgment was entered on the basis of the default, if you compare the transcript to the judgment that was actually entered, the court never stated from the bench that he was entering judgment on the basis of a default. He thought he was granting a summary judgment, it seems. But in any event, counsel was asked whether Mr. Duff could hear from the SBA with regard to the pending $1.5 million offer. And counsel for the bank said, on April 9, 2018, in the case that the SBA comes back and says we approve the sale, it's a cash offer. So if it's going to close in 45 days, I'm not going to go to sale. Well, what happened was on June 28- Mr. Supporta, Mr. Supporta, your red light is on. You'll have time to reply. I apologize. Okay. Okay. Thank you. Mr. Cappadona, you may respond. Thank you, Honorable Justices, counsel. I represent First Midwest Bank, the appellee in this matter. As an initial matter, I want to point out that this appeal is taken from an order denying the appellant's emergency motion to cancel sale, vacate order default, vacate judgment of foreclosure and sale, and compel acceptance of a short sale, which we referred to in the briefs as just a motion to vacate for simplicity. This motion was taken, or this appeal was taken pursuant to 304A language in the order denying, which was stated there's no just reason for delay of enforcement of appeal of this order. So this appeal should be limited to the order denying that motion as well as the written motion that the appellant appeals from. When you take a closer look at the written motion that was filed by the appellants in this case, it's much more limited than the arguments advanced by the appellant during oral arguments on September 29, 2018, as well as the arguments advanced on appeal. That motion was limited in that it only set forth arguments on the basis that one, this motion was brought pursuant to 1301, it was timely, and the judgment of foreclosure and sales is not a final order. And also on the basis that substantial justice was not done. In arguing what substantial justice was not done, the appellant argued one, that they had a meritorious defense. The meritorious defense that they argued was that because the plaintiff, because First Midwest Bank had pled separate counts on the note in the guarantees in the complaint, that there's an adequate remedy at law, and it precluded a judgment of foreclosure in this case. They also argued that the appellants were mitigating damages and advanced a short sale offer as a basis of substantial justice not being done. So my argument is that the court should limit the arguments advanced by the appellant as to what's in that written motion. Nevertheless, the first argument advanced the appointment of the receiver was not in the written motion advanced by the appellant. And I don't believe that that was argued on the September 28 hearing. I may be, I'd have to look back at that, but it was not advanced in the written motion, but nevertheless I'll address that. The appellant argues that the order appointing receiver must be vacated because only the mortgagor was served prior to the order appointing a receiver. What he liked to refer to as a bare legal title holder. The appellant advances and argues that there's an additional requirement that should be read into the Illinois Mortgage Foreclosure Law that any beneficiaries under land trust must also be served in order for a court to enter an order appointing a receiver. And it's just not the case and it's not what the Illinois Mortgage Foreclosure Law says. If you look at 1701 of the Illinois Mortgage Foreclosure Law, it sets forth the basis for appointment of a receiver. Is this issue raised for the first time on appeal? It is, Judge. Then let's go to the issues that are on appeal. Thank you, Your Honor. The next issue raised is that the entry of a judgment of foreclosure and sale was reversible error. In that argument, the appellant tries to paint the trial judge as confused and entering judgment of foreclosure and sale arbitrarily. It goes a great length to paste certain excerpts from the hearing and the transcripts to try and paint that as a decision made without reason. And if you take a look at the procedural history and the facts, it's quite the opposite. The matter was motioned up on March 19, 2018 by First Midwest Bank for a motion for summary judgment against the Small Business Administration, which had a verified answer on file asserting their claims and a motion for default against all other parties. On March 19, the court entered an order of default against all those parties. At that time, it was informed that plaintiff was in discussions with counsel for the SBA as to getting the required amounts as to their lien to be included in the judgment and the necessary language that the Small Business Administration wanted in the judgment. That was not complete, so the matter was continued. And if you look at the order, which is in the record, it was continued until April 9 for hearing on the motion for summary judgment and entry of judgment of foreclosure and sale. On April 9... Mr. Capodono, when was Mr. Duff served and how was he served? Mr. Duff was served... Take a look at the judgment. He was served December 1, 2017 by personal service. And what was his capacity in having to be served? Mr. Duff was a guarantor. Okay. He was not the mortgagor. The mortgagor in this case was... It's always been Chicago title. It was always in Chicago title, yes. And they held legal and equitable title to the property. Correct. And pursuant to land trust, the purpose of that is the public doesn't know who the beneficiaries are. Well, yeah, that's black letter law, but he was a guarantor. He was a guarantor, and he was joined in a separate count in the complaint as a guarantor, which pursuant to Illinois mortgage foreclosure law is allowed. As a permissible party. And in fact, it sets forth, I believe it's Section 1501, that if you're going to join a guarantor, it needs to be by a separate count. But it's only permissible party, not a necessary party. Correct. It's a permissible party. So in the case where you have a mortgage foreclosure action, where you have the security interest in the property, you also have a note and guarantors. You could you could file separate action against the guarantors, as the court has recognized is long with longstanding Illinois law and the court recently recognized in First West Bank versus Cobo, which I don't believe is cited in the briefs, and I can give you that citation if you want. It's 124 NE3D926. Or you could file it as a joint action, which was done in this case. So there are separate counts on the note and guarantees and a separate count on the mortgage foreclosure. Well, if you were really simplistic, like I tend to be, you do not need to bring Mr. Duff in this foreclosure action. Am I correct or incorrect? I'm correct. You are correct. You could bring a separate action following the judgment of foreclosure and sale, right? You absolutely could. Thank you. Mr. Capodono, one other question on the procedural history. How was Mr. Duff notified of the April 9th hearing for him to be physically present? Judge, if you look at the record, I had a certificate of service of mailing of the order default, which was entered on March 19th. So despite the fact that he was served at that time and knew of the proceedings, he was also served with a copy of that order default and also the order setting the matter for April 9th for hearing and entry of judgment of foreclosure and sale. Thank you. So on April 9th, Mr. Duff did appear. And at that time, his only request to the court was for an additional 30 days for the SBA to review a pending short sale offer. He didn't ask orally to vacate the order default that was entered against him that he knew about and was spoken about at that hearing. He didn't ask for time to file a response of pleading to the complaint. Those facts are unlike the Stotler case, the Stotler Drug Company case that the appellant has cited to and asserted his authority in their argument. In that case, the defendant appeared not only had he filed an answer in response of pleading, but he orally requested at hearing for the court to vacate the order default. That was never done here. Well, let me ask you again, Mr. Capodono, what's his standing to object to this? Standing, I'm sorry, standing for Mr. Duff to object to... No, this is proceeding. He's proceeding. He's a permissible party. He got served. You said you didn't need to go ahead against him anyway. I don't think there is any standing for a guarantory to object to the judgment of foreclosure and sale. Just keep asking the same question. So we're talking about what he did or didn't do in April, right? Yes. And did you raise that issue before the trial court? The standing issue was not raised before the trial court. The next argument advanced by the appellant is that the denial of the motion to vacate was reversible error. The appellant argues that the judgment of foreclosure and sale should have been set aside as it wasn't a final order. They rely on that Atkins case as pretty much their sole authority. Atkins really, it was a tax collector case, first of all, and it was brought pursuant to the predecessor statute of 1301E. But that case really stood for the fact that there's no requirement for showing of a meritorious defense. That isn't something that needs to be shown under a 1301 petition. But if you look at the Wells Fargo v. McCluskey, it sets forth what the standard is on a 1301 motion. That is something that could be considered, but the standard on 1301 is substantial justice. And in looking at substantial justice, the court has to make a determination of the facts of the case, the procedural history. And there's not a hard and fast rule for all situations. If you look at the facts of this case, the procedural history, the fact was that the mortgage or never appeared in this case. The only one that did actually physically appear in person was Mr. Duff, who was a guarantor in this case. At no time did he make even an oral motion to vacate the judgment of foreclosure or an oral motion to vacate the default. And he didn't ask for, nobody had ever asked for time to respond to the complaint that was filed. In the defendant, in the appellant's motion, they argued the meritorious defense of adequate remedy at law. And as I discussed previously, the basis of that argument is that for some reason, the appellant argues that I wasn't able to bring an action on a note and guarantee at the same time as a mortgage foreclosure count. And that's just not the case. That's not what the law is. That's not what 1501 of the Illinois Mortgage Foreclosure Law says. And then the appellant argued the fact that they were attempting to mitigate damages. The appellant said several times that the short sale would resolve the litigation, which is just totally untrue. If you look at the judgment amount, a short sale offer of $1.5 million would leave a very large deficiency on behalf of First Midwest Bank, as well as the SBA. How large a deficiency, Mr. Papagianni? It would depend on the closing figures, but most likely it would pay off First Midwest Bank. At that time, it would have paid off the First Midwest Bank first lien and maybe a few hundred thousand dollars of the SBA second lien. So there would have been still a few hundred thousand dollars left on the SBA second lien, as well as the $800,000 on the third tier lien for First Midwest Bank. But they knew that, didn't they, the SBA? They did know that, and they did not agree to release a deficiency. They would agree to accept funds from the closing to release their lien, but not a deficiency. But more importantly, there was never a binding contract ever presented in this case. The only things presented was a non-binding LOI and then an unsigned offer contract. There's never been a written contract, and that was noted by the appellant in the oral argument in September that they were still trying to negotiate the terms of the contract. There was never a final contract. And on September 28th, when the court denied their motion, it was even admitted that that short sale offer, which formed the basis of their motion, had fallen through. And that basis of their motion was then moved. So at the time of hearing on the order denying their motion to vacate, the sole basis remaining in their written motion for ruling on was just the meritorious defense on the adequate remit law. So unless there's further questions, Your Honors, I'd like to rest on my argument and the pleadings. And I'd ask this court to respectfully uphold the ruling of the lower court. Any further questions from the court? I have a quick question, Justice Holdredge. Counsel for Appellee, I don't want to mispronounce your name. The substantial justice, doesn't that require a finding of fact by the trial court? A finding of fact in ruling on the motion? Yes. Whether substantial justice has been done or would be done? I don't believe it does. But when you look at the facts here, I think it's clear that substantial justice was done. Did the trial court make any findings with respect to substantial justice? The court didn't make any findings, no. Thank you. Mr. Seporda, you may reply. Thank you, Justice Holdredge. With regard to the standing of Mr. Duff, Mr. Duff is the president of Prime. He did business as Prime. Prime is the beneficiary under the land trust. And in counsel's own cited case of CT&T versus Exchange National Bank out of the second district, that court recognized. However, when it appears, and I'm quoting, that the trustee may not be able to protect the beneficiary's interest, the latter should have the option of intervening in the foreclosure proceeding. So while you're right, they're not a necessary party, they were named parties in this case. They clearly have standing, they're parties in the case. For counsel to argue, as he just did, that the last deal fell through, we presented our motion to vacate the default, and it was continued to October. I'm sorry, to September 28, 2018. But when you look at the transcript of proceedings from April 9, counsel made, essentially accepted, an offer of compromise and settlement, which is a complete defense to this action. He stated to the court and to Mr. Duff, who was in open court, and I quote, in the case that the SBA comes back and says we approve the sale, it's a cash offer, so if it's going to close in 45 days, I am not going to sale. That's in the record at page 21 and our appendix at page 49. On June 28, 2018, the SBA, by way of a letter, stated that if the defendants were to procure a purchase price of $1.5 million, the SBA would release its lien for $369,000, or all sale proceeds net of the mortgage payoff to the prior lien holder, First Midwest Bank. On July 3, 2018, the offer was put in the form of a formal contract. It wasn't just a letter of intent, which Mr. Duff had back on April 9, but on July 3, they increased their offer to purchase a commercial property to $1.5 million. That's in the common law record at 417.20. It's in our appendix at 39-42. Now, did the bank honor what they told the circuit court judge back on April 9, 2018? No, they reneged. Two weeks later, after promising the court, after promising Mr. Duff, that they weren't going to go to sale, they post on July 17, 2018, a notice of sale. Now, that's bad faith. It's inequitable conduct. I would argue that on April 9, he agreed to a full compromise and settlement of claims because he said if the SBA approves it, he's not going to go to sale. What does he do? Two weeks later, they post a notice of sale. The potential buyer saw that notice of sale, and he withdrew the offer. That's why that $1.5 million offer went away. My client had a prior $1.5 million offer from the previous year that also went away. May I ask, Mr. Seporda, what's the thinking when there's a notice of sale that someone who's trying to buy property would renege on an offer? Is it because they're going to go to the sale and try to do better? It could be. It could be, but it was an intentional act on the part of the bank after they had already promised the court that they would not go to sale. Mr. Seporda, a notice of sale isn't an actual sale, is it? No, it's not. I'm sure you've been through many sales where there was a notice, but they simply didn't go through. It could be, Your Honor, but what's the intention? The intention is we won't go to sale if the SBA approves this and if we have an offer of $1.5 million. They had that in hand, and then 14 days later, they send out a notice of sale. You're not going to post a notice of sale if you don't have the intention of going to a judicial sale. It was at that point that Mr. Dove Prime and Chicago Title retained my office to come in to bring the motion to vacate the default. Now, you want to know why he didn't do this for months and months and months? The bank froze all his accounts, seized all his assets, put him out of business. He didn't have any source of income during that time. They stripped him of all his financial resources. He couldn't retain counsel, I would submit to the court. And he was bending over backwards after he'd been stripped of his business, his accounts frozen, the rest of it. The $200,000 that's never been accounted for. Mr. Sport, I'd let you go way over on your time on reply. Well, thank you. With all due respect, I was answering Justice Doherty's question. The $200,000 was never accounted for. I think you've answered it, Mr. Supportive. Thank you. Thank you. Justices, thank you. Thank you, counsel, both for your arguments in this matter. This morning will be taken under advisement. A written disposition shall issue. Our deputy clerk will escort you away out of the remote courtroom. Thank you.